2016-2149 E-Video v. United States. Mr. Delaney, please proceed. Thank you, Your Honors. Good morning. My name is Patrick Delaney. Our amended complaint clearly states that the implied contract under 37, with deletions within this paragraph, but it says the implied contract under 37 CFR section 1.17 entitles the plaintiffs and the class to a monetary award of a return of their official fees and reasonable attorney fees paid after their applications were designated or associated with the Solace Program. Our request for damages requests at least the return of fees and for any of these attorney's fees that were under the Solace Program. Is there any allegation that in fact that there was some damage or financial harm caused by any delay that resulted from participation in the Solace Program? There is statistical evidence that has been published that is referenced in my reply brief that has been analyzed by Dr. Kate Gowdry, but the Patent Office has not provided specific data about specific applications, so we have not been able to make a... But none of your putative plaintiffs, your representative plaintiffs, have alleged that there was some business model that they were going to pursue that somehow got delayed or that there was some financial burden on them because of this. All of our plaintiffs were vetted, Your Honor, and by all appearances of the subject matter and their patent applications, they appear to have been... They would have been associated with the Solace Program. We don't have direct evidence of that. They also all had extremely long dependencies of their applications. In other words, their applications... I get that. I mean, I get that that's what you're saying, but it's interesting that the only damages you seek is the return of your fees. You're not saying that somehow your businesses were slowed down or your business models were harmed. I don't really understand the theory. We had considered that, Your Honor. We thought claims to extend to that area would be too tenuous, and we wanted to have something that would be associated with the patent application process and the implied contracts that are associated with the patent application process. Okay. So, based on the statements in the amended complaint under engaged learning, this court has said that establishing subject matter jurisdiction in a contract manner with the government requires no more than a non-frivolous allegation of a contract with the government. We believe our also... What do you consider the offer and the acceptance? The offer, Your Honor, the offer in this case would be the offer for the patent office to accept a patent application for examination. And what is that based on? That is based on 35 U.S.C. It's based on the regulation, right? It's based on statute. On the statute. Do you have any evidence for suggesting that a statute can create an implied in fact contract without any other acts by the contracting authority? Yes. Yes, we have. The case we cited on this was... Wait, wait. I'm confused. In your reply brief, you say you have not argued that any statute operates to create an offer or other contractual term. So, how are you now saying that the statute creates an implied in fact contract? Well, we didn't reference 35 U.S.C. 111 as creating the implied contract. We referenced 35 U.S.C. 1.17, which is the requirement of payment of fees by the patent applicants for the processing of their patent applications after they have been filed. But you paid fees. Your application was processed, right? Correct. You didn't have to pay any extra fees because of the SAWS program, right? We don't know that, Your Honor. We don't know that yet because we don't know if we paid fees for patent application processing that was going on after the applications have been designated in the SAWS program. You know what fees were paid and you know what the fee schedule is, right? I mean, in good faith, if you're proceeding in good faith and you know if you paid fees beyond what the normal applicant would pay, right? The question that needs to be addressed is whether or not fees were paid after the application was designated in the SAWS program and a pendency of the application was extended based on the designation. And you're saying you don't know if you paid fees? We know that we paid fees. Yes, we do know we paid fees. We don't know if those fees were paid before or after the application. I don't even understand what you're talking about. There are no special fees associated with being in the SAWS program. There are no impact fees associated with being in the SAWS program. It's not as though you were required to file additional layers of information and attach additional fees because of the SAWS program. You're just sort of saying it's a matter of timing. Well, maybe we you know, extension fee and it happened to occur after the SAWS program, but there's no causal link between the SAWS program. We've alleged no causal link between any particular fee. You haven't even alleged you paid any, but you haven't even told me how there could be a theory under which some fee that you paid happened if it came after the SAWS program could have been as a result of the SAWS program. Yes, Your Honor. In our reply brief, we addressed that if an applicant had been apprised that their application was designated in the SAWS program, the most probable course of action would have been to suspend prosecution until the designation in the SAWS program was resolved. So, suspending prosecution would cease the requirement for paying additional fees because once a patent application is in prosecution, it continues to be processed. There's a continual payment of fees and there's good reason for this. But that's not whether it's in the SAWS program or not. That's not a result of the SAWS. None of those fees are as a result of being in the SAWS program. All of those are the fees associated with normal prosecution. Correct, correct. But our point is, Your Honor, is that if we had been apprised of the application being in the SAWS program, we would have requested suspension of the applications and that would have ceased the requirement to keep on paying fees. But you would eventually have to have paid those fees if you wanted a patent, right? We don't know that. There is anecdotal evidence. You know what the fee schedules are. We know what the fees are. We know what fees would be paid in the future based on prosecution continuing. What we don't know is whether or not prosecution was extended, rejections or objections maintained. Well, you don't allege that you paid an extra fee because of this SAWS program, right? We don't allege that, no, Your Honor. We don't allege we paid extra fees. We allege that we paid fees for a full examination that would have apprised us of all the objections or rejections, including the SAWS designation. That's what we paid for and we were deprived that what we paid for. Okay, so the PTO promised you what? They didn't promise to give you a patent. No, they promised to give you upon every step of the examination process by law that PTO is required to give a detailed explanation. So maybe you have an APA argument that you could say they violated the APA during the course of your application. But how is that a contract that you get money for? Well, the contract that we've explained is that in the patent examination process, at every step of the patent examination, the PTO has to explain to us exactly why they're, all the reasons that they're rejecting. That's a statutory duty. That's a regulatory duty. That is an implied in law contract. That's not an implied in fact contract. You're just repeating statutory provisions and saying that by paying money in compliance with these statutory provisions, a contract has been created. But the Supreme Court has made clear that implied in law contracts, obligations based upon statute, can't create an implied in fact contract. How do you get around that? Well, we say, well, those are notice provisions. What we're talking about here is notice provisions, the 35 U.S.C. 132. Right, which are prototypical statutory and regulatory type provisions, not contractual provisions. Correct. Correct, Your Honor. They are, you know, the notice, the notice giving aspect of that also gives rise to a breach of the implied in fact contract. No, no, no, no. You can't just say breach of those notice provisions give breach to a breach of an implied in fact contract without addressing my question of whether there's an implied in fact contract at all, since all we're talking about is statutory and regulatory provisions. How does a statutory or regulatory provision give rise to an implied in fact contract? It does not directly give rise to an implied in fact contract. We're saying an implied in fact contract exists. Well, then what is giving rise to the implied in fact contract? Because all you've talked about are statutes, statutory provisions. Is there something more that the director or the PTO or somewhere said that you can point to that gives rise to an actual contract? Yes, Your Honor. What is not, what the PTO director has has leeway to set all these fees. Based upon a statute and a regulation. Correct. They're given the authority to set those fees and they set those fees and in setting those fees. Let me just cut to the chase. Do you have anything to point to besides a statute or regulation that would form the basis for an offer? No, we do not, Your Honor. And I'd like to save the rest of mine for rebuttal. Thank you. Mr. Riley, please proceed. Good morning, Nicholas Riley, United States. I think it sounds like from the court's questioning that has a very firm handle on the issues in this case. I'm happy to answer any specific questions the court might have either about standing or about. Well, I'm kind of curious about the reach of Hercules in this case. Because I mean, it seems pretty clear that statutory and regulatory duties usually don't create contractual obligations. But there are certain circumstances where I think, you know, it's clear they have. I don't know if you're familiar with what's been going on in the Court of Federal Claims and this court, but they're clearly all creatures of statute and regulation at some point. You know, Congress enacted that whole scheme, made utilities enter into these agreements and things like that. And so that's all based upon statutes and regulations, at least at some point. But clearly we found that there's a breach of contract there too. Why isn't something like this where the PTO is authorized to set up the scheme but then actually sets up a specific table of fees and the like for individually examining cases, an agreement to examine the cases in accordance with these things in exchange for money? And if you breach, you know, your duties and stuff, that can incur damages. Sure. Well, with the caveat that I'm not perfectly familiar with some of the Court of Federal Claims cases that you referred to, I think the reason why this case is different and the reason this particular statutory regime is different is because what is being framed here as offer and acceptance, that is the fee schedule and the payment of these fees, is entirely a creation of statute itself, right? So we're not talking about a situation where there's some negotiation or bargaining or something that resembles traditional contracting. We're not even talking about a situation where Congress, through statute, has identified particular officials at the agency to have contracting authority. We're talking about a situation where, which I think is much more analogous to just a traditional, you know, permit granting situation where the agency is carrying out some tasks that Congress assigned to it. I think it's also important to recognize that in this case, the actual provisions, that is the obligations that the PTO is alleged to have failed in carrying out, are notice provisions. And those, it's very clear in this case, arise entirely from statute. The only promises that have supposedly been breached here are promises that were supposedly made in these particular statutory provisions. So I think that's what distinguishes this case. If there are no questions about standing or other questions about the implied contract theory, I think the government's happy to rest on its papers. Thank you, Mr. Riley. Thank you. Mr. Delaney, you have some rebuttal time. Thank you, Your Honor. The, my opposing counsel has kind of mentioned the permit granting. That is the son broadcasting case, and that is, that is, that is a situation where the court found that, the federal claims court found that a regulatory provision gave rise to a contract. Sure, but what kind of permit was it? I mean, the government does show. It's a special use permit. It was a land use permit. Right. Right. So there was a back and forth negotiation. They probably offered to pay a certain amount of money to get that. That's a quintessential contract. Yes, Your Honor. Well, true. But a back and forth negotiation is not necessarily required for the formation of a contract. But if you're basing it on a statute or regulation, the Supreme Court made clear in Atchison that there has to be an express, clear statement by intent by Congress to be bound. And that's what we found in the spent nuclear fuel cases. There really was an express intent by Congress to create a contract. There's nothing like that here. In terms of, in terms of legislative intent, I would point to 35 U.S.C. 111A, where it expressly states that the director, you know, shall, shall, shall accept patent applications and set fees for patent applications. The language of the statute. And they accepted your patent application? Yes. And they set a fee for it? Yes. And there was no extra fee charged? Well, no. Not for the SAWS designation, no. If you have no further questions, we're prepared to rest as well, Your Honor. Okay. The case is taken under submission. Thank you. Our next case for today is Tues